**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **MARQUET J. HARPER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL NO. 3:10CV271** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Marquet J. Harper, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner in denying his application for Supplemental Security Income ("SSI") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED; that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on April 23, 2008, claiming disability due to mental impairment, chest pain, and leg pain, with an alleged onset date of April 23, 2008. (R. at 8, 101-106, 118-119.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 8, 47, 52, 62.) On September 11, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 23-36.) On October 7, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 17.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were

3

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).³ 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

³ SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. c 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. c 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

4

return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset date of his disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, an affective disorder, and a speech impediment, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-13.) The ALJ next determined that Plaintiff had the RFC to "perform a full range of work at all exertional levels, but with the following nonexertional limitations: [Plaintiff] is limited to simple, routine tasks with short, simple instructions, and he cannot engage in interactions with the general public or production pace work." (R. at 13.)

The ALJ then determined at step four of the analysis that Plaintiff had no past relevant work. (R. at 16.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 17.) Specifically, the ALJ found that Plaintiff could perform occupations such as a janitor, laundry sorter, or dishwasher. (R. at 17.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 18.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.; Pl.'s Mot. to Remand.) In support of his position, Plaintiff argues that: (1) the ALJ

erred by not affording the proper weight to the opinions of Plaintiff's treating physician; and (2) the ALJ failed to fairly describe all of Plaintiff's limitations in the hypothetical posed to the VE. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 7-14.) Defendant argues that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Mot. for Summ. J and Br. in Supp. Thereof ("Def.'s Mem.") at 11-18.)

        **A.**        **The ALJ properly analyzed the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by not assigning the opinion of Plaintiff's treating physician, Dr. May, controlling weight. (Pl.'s Mem. at 9-10.) Dr. May opined that Plaintiff "has moderate difficulty in performing and understanding simple, repetitive tasks on a sustained basis, and detailed or complex tasks are outside of his cognitive range." (R. at 266.) Dr. May further opined that Plaintiff's "ability to interact with supervisors, co-workers or the public is limited by his verbal skills as well as his speech impediment, and he is likely to decompensate under the stresses of competitive work." (R. at 266.) The ALJ afforded Dr. May's opinion "little probative weight because it [was] a one-time examination which [was] based entirely upon the claimant's self-report, as Dr. May noted that she did not have access to the claimant's previous cognitive testing or school records, nor did she perform cognitive testing during the examination." (R. at 16.) Plaintiff contends that the ALJ wrongly rejected Dr. May's opinion in favor of assigning controlling weight to the opinion of the non-examining, non-treating state agency medical health consultant. (Pl.'s Mem. at 11-14.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from Plaintiff's treating physicians, consultative examiners, and other sources that are consistent with each other, the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig. 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

  The ALJ concluded that Dr. May's opinion was only entitled to little probative weight because "it [was] a one-time examination which [was] based entirely upon the claimant's self-report." (R. at 16.) In reaching this conclusion, the ALJ indicated that Dr. May did not have access to Plaintiff's previous cognitive testing or school records, nor did she perform any cognitive testing during the examination. (R. at 16.) Furthermore, the ALJ found that Plaintiff's

actual cognitive functioning scores and his grades in school suggested a less extreme degree of limitation. (R. at 16.) The ALJ further found that "even if taken as true, the simple fact that [Plaintiff] has no structure, expectations or rules in his home, which has caused his persistence and motivation to be somewhat limited, is not illustrative of any physical or mental impairment which has resulted in functional limitation." (R. at 16.).

The ALJ found that the opinion of Dr. May was inconsistent with the other medical evidence. Specifically, "the objective medical evidence reflects that while [Plaintiff] suffers from multiple mental impairments, his ability to function is not limited to the degree alleged." (R. at 15.) The ALJ found that "[Plaintiff] has sought no low or no-cost mental health treatment" and "despite [Plaintiff's] alleged inability to concentrate, [he] has been able to perform quite well and even excel in numerous special education subjects." (R. at 15.). The ALJ noted that while Plaintiff's

> most recent allegations indicate that he engages in no daily activities at home whatsoever with the exception of watching television, playing video games and drawing, his earlier allegations of record state that he cleaned his room, prepared sandwiches and independently provided his own personal care, and there is no medical or psychological evidence given in the record which would explain such a decrease in functioning.

(R. at 15.) Lastly, the ALJ noted that "while the claimant informed medical professionals that he was significantly limited in his ability to exert himself physically, he was observed walking from an examination building at a regular pace with a large backpack on his back, which tends to lend a less credible light to his allegations generally." (R. at 15.)

Dr. May's opinion was also inconsistent with Plaintiff's very limited treatment history. (R. at 15, 23, 272.) The record indicates that Plaintiff did not seek formal mental health treatment. (R. at 11, 15, 23, 218.) An absence of treatment during the relevant period can

9

undermine a claimant's claim of disability. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that the denial of benefits was properly affirmed where claimant had not seen a doctor for over a year despite alleged constant joint pain, and where claimant made only one trip to the emergency room for tension headaches). In this case, Plaintiff did not have any formal mental health treatment. (R. at 23, 43, 45.)

Dr. May's opinion was also inconsistent with other objective medical evidence in the record. Although Plaintiff complained that he was limited in his ability to physically exert himself, as noted earlier, he was observed walking from an examination building at a regular pace with a large backpack on his back. (R. at 15, 273.) The record also indicates that Plaintiff did not suffer from suicidal ideation, paranoia, or delusions; had no bizarreness in his thought processes; and was alert and oriented during a psychological evaluation. (R. at 264.) The ALJ found that these inconsistencies lent "a less credible light to [Plaintiff's] allegations generally." (R. at 15.) Additionally, the ALJ found that Dr. May's one-time evaluations based on Plaintiff's self-report were not entitled to weight, given the length of the treatment relationship and the lack of medical signs and laboratory findings to support her conclusion. (R. at 15-16.) As previously noted, Dr. May did not have access to Plaintiff's cognitive testing or school records, and she did not perform cognitive tests during the examination. (R. at 16.)

Further, Dr. May's opinion was inconsistent with the opinions of the state agency mental health consultants. The ALJ assigned the opinions of the state agency mental health consultants controlling weight. (R. at 16-17.) Such opinions are treated as expert opinion evidence from a nonexamining source. (R. at 16, SSR 96-6.) The ALJ noted that the state agency mental health consultants' opinions "[were] well-supported and consistent with the medical evidence as a

whole." (R. at 16.) After reviewing the evidence of record, the state agency mental health consultants concluded that Plaintiff had the ability to carry out short and simple instructions, could maintain socially appropriate behavior, and was not precluded from performing the basic demands of competitive work on a sustained basis. (R. at 247, 250.)

Dr. May's opinion was also inconsistent with Plaintiff's own testimony as to his daily activities. Plaintiff indicated on numerous occasions that he prepared meals for himself, cleaned his room, helped out around the house, played video games with his brother, read magazines, drew, and watched television. (R. at 26, 28-29, 32-33, 138, 141-142, 151, 155, 172, 194.) The ALJ concluded that Plaintiff's own admissions demonstrated his ability to perform "simple, routine tasks with short, simple instructions." (R. at 13.) Notably, the ALJ also limited Plaintiff to occupations which do not require interaction with the general public or production pace work. (R. at 13.)

Accordingly, in light of the objective medical evidence, the opinions of state agency consultants, and Plaintiff's own descriptions of his activities, substantial evidence supports the ALJ's decision that Dr. May's opinion was not entitled to controlling weight. Therefore, the Court recommends a finding that the ALJ's decision should be affirmed in this regard.

### B. The ALJ fairly described Plaintiff's limitations in the hypotheticals posed to the VE.

Plaintiff asserts that the ALJ erred by failing to consider all of Plaintiff's limitations in the hypotheticals posed to the VE. (Pl.'s Mem. at 7-14.) Plaintiff argues that the ALJ improperly omitted functional limitations from Dr. May's opinion in such hypotheticals. Specifically, Plaintiff contends that the ALJ should have credited the VE's testimony that competitive work would be precluded if the individual had moderate difficulty performing and

11

understanding simple, repetitive tasks on a sustained basis. (Pl.'s Mem. at 7-14.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. As noted earlier, when a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.

The ALJ properly declined to credit the VE's testimony in response to hypotheticals based on Dr. May's opinion that included limitations not supported by the record. (R. at 17.) See Walker, 889 F.2d at 50 (ALJ's hypothetical question need only include those impairments supported by the record). Because Dr. May's opinion was given less than probative weight by the ALJ, the hypothetical posed to the VE by the ALJ did not need to include the limitations referenced in Dr. May's opinion. Given that the VE identified occupations that Plaintiff could perform, the ALJ reasonably concluded that Plaintiff was not disabled within the meaning of the Act. (R. at 17-18.) Accordingly, the ALJ's decision should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 9) and motion to remand (docket no. 10) be DENIED;

that Defendant's motion for summary judgment (docket no. 12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: February 22, 2011
Richmond, VA